**VKK CORPORATION, VKK Patriots, Inc., Victor K. Kiam II, Plaintiffs,**

v.

**NATIONAL FOOTBALL LEAGUE, B & B Holdings, Inc., The Five Smiths, Inc.; Buffalo Bills, Inc., The Chicago Bears Football Bears Club, Inc., Cincinnati Bengals, Inc., Cleveland Browns Football Co., Dallas Cowboys Football, Inc., PDB Sports Inc., The Detroit Lions, Inc., The Green Bay Packers, Inc., Houston Oilers, Inc., Indianapolis Colts, Inc., Kansas City Chiefs Football Club, Inc., Miami Dol-**

phins, Ltd., Minnesota Vikings Football Club, Inc., New York Football Giants, Inc., New York Jets Football Club, Inc., Pittsburgh Steelers Sports, Inc., San Diego Chargers Football Co., Seattle Seahawks, Inc., Tampa Bay Area NFL Football, Inc., Pro-Football, Inc., Touchdown Jacksonville, Ltd., and Touchdown Jacksonville,Inc., Defendants.

No. 94 Civ. 8335(MP).

United States District Court,
S.D. New York.

June 28, 1999.

Williams & Connolly, (Steven R. Kuney, Mark S. Levinstein and Kevin, Downey, of counsel), Washington, D.C., Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, LLP, (Robert M. Heller, of counsel), New York City, for plaintiffs.

Covington & Burling, (Gregg H. Levy, of counsel), Washington, D.C., Skadden, Arps, Slate, Meagher & Flom, LLP, (Shepard Goldfein, of counsel), New York City, Foley & Lardner, Co–Counsel for Jacksonville Jaguars, Ltd. f/k/a Touchdown Jacksonville, Ltd., (Steven Werber, Chanley Howell, of counsel), Jacksonville, FL, for NFL and Member Team, defendants.

Bledsoe, Schmidt, Lippes & Moonly, P.A., (Terrence E. Schmidt, of counsel), Jacksonville, FL, Cooperman, Levitt, Winikoff, Lester & Newman, P.C., (Allen G. Reit, of counsel), New York City, for defendant Touchdown Jacksonville, Inc.

### Decision on Defendants' Counterclaims and Sanctions

POLLACK, Senior District Judge.

### Decision

Essentially, the only open matters to be decided to reach finality are the questions of the recovery of costs and expenses claimed by defendants in counterclaims against plaintiffs for contract breach, and sanctions against the plaintiffs' attorneys.

The questions are raised (1) by the Counterclaims of defendants cast in form of breach of contract (the Release) by the plaintiffs and (2) the defendants' claim against opposing counsel under Section 28 U.S.C. § 1927 for multiplying the proceedings in the case unreasonably and vexatiously.

The plaintiffs have responded with a motion for summary judgment in their favor on the breach of contract claim and plaintiff's attorneys have denied engaging in unreasonable and vexatious proceedings.

After consideration of said claims against plaintiffs the Court has come to the conclusion that in the absence of a clear covenant not to sue in the General Release, the Counterclaims against plaintiffs cannot be recognized and will be dis-

missed. The document signed May 8, 1992 is not a covenant not to sue.

■ There nevertheless remains the question of whether the plaintiffs and their attorneys carried the legal proceedings to unfair and improper excess under 28 U.S.C. § 1927.

The General Release was central to this litigation. Its plain impact required careful evaluation before plaintiffs could reasonably have plunged into the far-reaching contentions promulgated here. The Release had been vigorously negotiated with plaintiffs' experienced counsel's advice at every step and concededly its language expressed a complete barrier to the antitrust claims and other claims asserted in this case.

The Release was nonetheless attacked on a claim of execution under duress and as part and parcel of a conspiracy. The authorities upholding and enforcing such Releases are legion. The thin responses of the plaintiffs to undermine the Release, namely as a product of economic coercion, which a jury promptly rejected, and as part and parcel of a conspiracy which would make it unenforceable, has regularly been rejected by the Courts. The testimony elicited at the trial attested to the voluntariness of plaintiffs' decision to execute and deliver the Release, which included clauses demanded by plaintiffs' counsel and of advantage to plaintiffs.

■ The massive legal proceedings herein undertaken by plaintiffs' counsel, with far flung deposition practice, have burdened the defendants with millions of dollars of expenses. Surely, the litigation initiated and conducted by the plaintiffs has been overbroad and gives grave suspicion concerning their propriety, necessity and purpose. Attorneys, as officers of the Court, may not be blind to unprovable or legally discredited claims and should refuse to prosecute merely vexatious and unreasonable proceedings. However, even seemingly flagrant abuses of the judicial process are difficult to weigh and without conclusive illustration do not warrant sanctions. The substantial suspicion thereof certainly exists here—particularly shown by some of the testimony that was adduced at the Release trial.

The attorneys for plaintiffs stoutly maintain that a sense of propriety existed in their proceedings. The defendants failed to move for Rule 11 sanctions to head off and dampen the activities undertaken during the lengthy pretrial period. Questions of judgment existed on the part of litigating counsel in the fair representation of their clients and there is the public interest in enforcement of the antitrust laws.

A partial answer may be that it is up to the Courts to oversee actively and rein in excessive advocacy to forestall runaway litigation of claims that can give rise to the excesses that do occur when tight judicial supervision is not applied.

At all events, after due consideration of all of the factors involved and the high standard required for the imposition of sanctions, the Court is not persuaded that sanctions are due here.

Accordingly, an amended judgment will be timely filed pursuant to Rule 59 of the Federal Rules of Civil Procedure reflecting these rulings and terminating the remaining matters involved in the case.

So Ordered.